IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RICHARD K. RODGERS #258106,           :

      Plaintiff,                                    :

vs.                                                       :        CIVIL ACTION 08-0372-WS-C

SHERIFF BOBBY MOORE, et al.,          :

      Defendants.                               :

REPORT AND RECOMMENDATION

      Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed
a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned for a
report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule
72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary
Judgment (Docs. 10, 11), and Plaintiff's Motion for Summary Judgment.  (Doc. 17).
After consideration of the pleadings and the evidence presented by the parties, and for the
reasons set forth below, it is recommended that Plaintiff's Motion for Summary Judgment
be denied, that Defendants' Motion for Summary Judgment be granted, and that
Plaintiff's action against these Defendants be dismissed with prejudice.

I.  SUMMARY OF ALLEGATIONS

      From its review of the record, the Court summarizes the parties' allegations which
are material to the issues addressed in this Report and Recommendation.

      1. At the time of the incident made the basis of this litigation, Plaintiff was an
inmate incarcerated at the Clarke County Jail.  (Doc. 1 at 4, Complaint).

2. According to Plaintiff, on December 18, 2007, at approximately 6:30 p.m., he got into a fight with another inmate and suffered a cut to his head, causing it to bleed "very badly."  (Id.; Doc. 17 at 8, Plaintiff's Affidavit in Support of Summary Judgment).

3. Jail Officer Nicholas Norwood released Plaintiff from the unit to see Jail Officer Karen Pritchett in the booking area.  (Doc. 17 at 8).

4. Officer Pritchett observed blood on Plaintiff's clothing, head, and face.  (Doc. 11, att. 3 at 1, Pritchett affidavit).

5. At approximately 6:45 p.m., Officer Pritchett  instructed Plaintiff to take a shower and change his clothes, after which she cleaned the his wound, applying peroxide and a bandage.  (Doc. 11, att. 5 at 1, Jail Log; Doc. 11 att. 3 at 1; Doc. 17 at 8-9).

6. At approximately 8:10 p.m., Officer Pritchett telephoned Defendant, Jail Administrator Renetta Chapman, and notified her of the incident and the fact that Plaintiff was bleeding.  (Doc. 17 at 9; Doc. 11, att. 2 at 1, Chapman Affidavit).

7. Defendant Chapman instructed Officer Pritchett to notify the nurse on call and to check Plaintiff and see if he needed immediate medical attention.  (Doc. 11, att. 2 at 1).

8. At approximately 8:15 p.m., Officer Pritchett telephoned the jail nurse.  (Doc. 11, att. 3 at 1, Pritchett affidavit).

9. The nurse returned Officer Pritchett's call at approximately 8:30 p.m. and advised that she would be coming to the jail "after awhile."  (Doc. 11, att. 5 at 1; Doc. 11, att. 3 at 1).

10. Defendant Chapman called back to the jail to check on Plaintiff, and Officer

Pritchett informed her that she had let Plaintiff clean up and that she was going to put him in an observation cell and give him something for pain.  (Doc. 11, att. 2 at 1).

11.  Officer Pritchett further informed Defendant Chapman that she had called the nurse but that the nurse had not yet arrived.  (Id.).

12.  Officer Pritchett advised Chapman that, in her opinion, "just by looking at [Plaintiff's wound]," he did not need to go to the hospital for immediate medical attention.  (Id.).

13.  By approximately 8:30 p.m., Plaintiff's head had stopped bleeding.  (Doc. 11, att. 5 at 1).

14.  Officer Pritchett placed Plaintiff in cell BK-3 for observation and checked on him periodically throughout the night to make sure that he was not bleeding.  Each time, Plaintiff advised Officer Pritchett that he was "alright."  (Doc. 11, att. 3 at 1).

15.  At approximately 2:30 a.m. on December 19, 2007, Officer Pritchett called the nurse again but got no answer.  (Id. at 2).  The nurse never arrived.  (Doc. 11, att. 5 at 1).

16.  When Officer Pritchett's shift ended at 6:00 a.m., she advised Shift Supervisor Shirley Washington about the incident and Plaintiff's injury.  (Doc. 11, att. 3 at 2).

17.  Officer Pritchett further notified Supervisor Washington that Plaintiff was in the observation cell, that the nurse had been called, and that Plaintiff needed to see the nurse when she came in.  (Id.).

18.  At approximately 8:00 a.m., Defendant Chapman returned to work and was informed that the nurse had not arrived.  (Doc. 11, att. 2 at 1).

3

19. Defendant Chapman went to see Plaintiff to look at his wound.  She concluded that, though not an emergency, the cut on his head warranted further medical attention. (Id. at 2).

20. Defendant Chapman called Dr. Huey Kidd and secured an appointment for 12:45 p.m. that day. (Id.; Doc. 17 at 9).

21. Plaintiff was later transported to Dr. Kidd's office where he received nine staples (three on the right side of his head and six in the back) and was prescribed an antibiotic.  (Doc. 17 at 10).

22. According to Plaintiff, he received no pain medication on the night of his injury or the following day, December 19, 2007.  (Doc. 17 at 11; Doc. 1 at 12).

23. Over the following three days, December 20-22, 2007, Plaintiff received pain medication twice a day.  However, it was only given at night.  Plaintiff received no pain medication during the day.  Plaintiff did receive his antibiotic as prescribed.  (Doc. 1 at 12-13; Doc. 17 at 11-12).

24. Beginning December 23, 2007, Plaintiff received pain medication whenever he needed it.  (Doc. 17 at 12).

## II.  PROCEDURAL ASPECTS OF THE CASE

1. On June 30, 2008, Plaintiff filed the present § 1983 action against Defendants Sheriff Bobby Moore, Clarke County Commissioner Joe Hunt, Jail Administrator Renetta Chapman, and Jail Officer Zanetta (incorrectly designated as "Linda") Pugh, alleging delay of proper medical treatment following Plaintiff's altercation with another inmate on

4

December 18, 2007.  (Doc. 1 at 4).

2. While not well-pled, it appears from Plaintiff's Complaint and his Motion for Summary Judgment that he is claiming that Defendants Sheriff Moore and County Commissioner Hunt, whose duties allegedly included supervising the jail, failed to ensure that the jail staff provided him timely, adequate medical care.  (Doc. 1 at 5-8; Doc. 17 at 4-5).

3. In addition, Plaintiff appears to allege that Defendant, Jail Administrator Chapman, unconstitutionally delayed taking him to the doctor for nineteen hours following his injury, and Defendant, Jail Officer Pugh, unconstitutionally delayed giving him pain medication on December 21, 2007.  (Doc. 1 at 8-9, 12-13).

4. Plaintiff seeks compensatory damages.  (Id. at 11).

5. In their Answer and Special Report filed on February 10, 2009, Defendants deny Plaintiff's allegations and assert the defenses of absolute and qualified immunity.[1]  (Docs.

---

[1] Plaintiff does not specify whether he is suing Defendants in their official or individual capacities or both.  Thus, the Court will consider both.

As state officers, Sheriff Moore, Jail Administrator Chapman, and Jail Officer Pugh are absolutely immune from suit for damages in their official capacities.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); Turquitt v. Jefferson County, Ala., 137 F.3d 1285, 1288-89 (11th Cir. 1998) (a county sheriff acts as a state officer when supervising inmates and operating county jails); Carr v. City of Florence, Ala., 916 F.2d 1521, 1526-27 (11th Cir. 1990) (deputy sheriffs are considered legal extensions of the sheriff who also enjoy Eleventh Amendment immunity); Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1430 (11th Cir. 1997) ("jailers are state officials for the purpose of Eleventh Amendment immunity.").

Also, as a County Commissioner, Defendant Hunt is entitled to absolute legislative immunity for his duties related to the jail, which are limited to funding the operation of the jail

10, 11).

6. On March 4, 2009, the Court ordered that Defendants' Answer and Special

Report be treated as a Motion for Summary Judgment.  (Doc. 14).

7. On March 24, 2009, Plaintiff filed a Motion for Summary Judgment.  (Doc. 17).

Those motions are now before the Court.

## III.  SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins

with these basic principles.  The Federal Rules of Civil Procedure grant this Court

authority under Rule 56 to render "judgment as a matter of law" to a party who moves for

summary judgment.

2. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

and providing facilities to house the jail.  See  Hawes v. Bowden, 2009 WL 88554, *3 (M.D. Ala. 2009); Turquitt, 137 F.3d at 1289.

In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  Until recently, the Court followed the mandatory procedure of Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part, Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and then, if the first step was satisfied, determine whether the right at issue was clearly established at the time of the alleged misconduct.  While that procedure is now discretionary, as opposed to mandatory, see Pearson, id., the Court finds it beneficial in this case.  Having found herein that Plaintiff's allegations related to his medical treatment do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.

is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c).

3. The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

4. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also</u> <u>Celotex Corp.</u>, 477 U.S. at 325-27.

5. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

6. "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.</u>, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

<u>IV.  DISCUSSION</u>

7

1. As discussed above, Plaintiff seeks redress in this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of the medical treatment that he received at the Clarke County Jail after being injured in a fight with another inmate on December 18, 2007.  (Doc. 1).

2. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

3. In addressing Plaintiff's claims brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed. . . ."  Graham v. Connor, 490 U.S. 386, 394 (1989).

4. At the time of the incident made the basis of this litigation, Plaintiff was being held in the Clarke County Jail as a pretrial detainee on a charge of reckless murder by means of a vehicle.  (Doc. 1 at 6; Doc. 11, att. 6 at 1, docket sheet; Doc. 11 at 4, Special Report).

5. As a pretrial detainee, Plaintiff not entitled to the constitutional protection afforded convicted prisoners by the Eighth Amendment; however, he was afforded identical protection by the Fourteenth Amendment.  See Danley v. Allen, 540 F.3d 1298, 1306 (11th Cir. 2008) ("Pretrial detainees, who are not protected by the Eighth

8

Amendment, can bring the same claims under the Fourteenth Amendment.").

6. "[T]he minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to serious medical needs." Lancaster, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

7. "[I]t makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.'". Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005).

8. In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983.

9. To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the objective existence of a "serious" medical need. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d

9

1176, 1186 (1994), <u>overruled in part on other grounds</u>, <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 n.9 (2002).

10. "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  <u>Hill</u>, 40 F.3d at 1187 (citations omitted).

11. "[T]he medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'"  <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citations omitted).

12. Next, in order to meet the required subjective element of an Eighth Amendment denial of medical care claim, a plaintiff must demonstrate "deliberate indifference" to a serious medical need.  <u>Hill</u>, 40 F.3d at 1186.

> In <u>Estelle</u>, the Supreme Court established that "deliberate indifference" entails more than mere negligence.  <u>Estelle</u>, 429 U.S. at 106, 97 S. Ct. 285; <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. 1970.  The Supreme Court clarified the "deliberate indifference" standard in <u>Farmer</u> by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added).  In interpreting <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u> that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must

constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46 (emphasis in original).

13. "Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." Hill, 40 F.3d at 1187 (internal citations and quotation marks omitted).

14. "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." Id.; accord Lancaster, 116 F.3d at 1425 (applying the Fourteenth Amendment).

15. "The tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." Hill, 40 F.3d at 1188 (emphasis in original) (quoting Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994)).

> The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Gaudreault, 923 F.2d at 208; Monmouth County, 834 F.2d at 347. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." Id.

Hill, 40 F.3d at 1188 (emphasis in original).

16. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish

11

the detrimental effect of delay in medical treatment to succeed." Id. (emphasis added) (footnotes omitted).

17. For the reasons set forth below, the Court finds that Plaintiff's claims fail as a matter of law.

    A.    <u>No Respondeat Superior Liability</u>.

18. As discussed above, Plaintiff appears to allege in his Complaint that Defendants, Sheriff Moore and County Commissioner Hunt, are in charge of supervising the jail and, as such, are responsible for the jail staff's failure to provide him timely, adequate medical care. (Doc. 1 at 7-8; Doc. 17 at 4-5). Plaintiff's theory against each of these Defendants is flawed.

19. First, with respect to County Commissioner Hunt, Alabama law is clear that it is the sheriff, not the county or its commissioners, who "has control over the inmates of the jail, the employees of the jail, and the jail itself." <u>Turquitt</u>, 137 F.3d at 1289, 1291 ("The County cannot be liable for the harms that befall jail inmates due to improper operation of the jail or negligent supervision of its inmates because the County has no responsibility in that area.").

20. Therefore, Commissioner Hunt cannot be held liable for failing to ensure that the staff at the Clarke County Jail provided Plaintiff timely, adequate medical care, and he is entitled to judgment as a matter of law of Plaintiff's claim.

21. Second, with respect to Sheriff Moore, "[i]t is well-established that a 'Sheriff

can have no respondeat superior liability for a section 1983 claim.'"  Weaver v. Mobile

County, 228 Fed. Appx. 883, 886 (11th Cir. 2007) (unpublished)[2] (quoting Marsh v.

Butler County, 268 F.3d 1014, 1035 (11th Cir. 2001)).  See also Edwards v. Alabama

Dep't of Corrs., 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat*

*superior* is not sufficient to support [plaintiffs'] § 1983 claim. . . .") (citing Monell v.

Department of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)).

22. In order to state a claim upon which relief can be granted in a § 1983 action,

Plaintiff must establish a causal connection between each defendant's "actions, orders,

customs, policies, or breaches of statutory duty and the alleged deprivation of his

constitutional rights."  Frankum v. Chapman, 2009 WL 1118875, *3 (S.D. Ala. 2009); see

also Trotter v. Correctional Medical Services, Inc., 2008 WL 2225696, *9 (S.D. Ala.

2008).

23. "[S]upervisory liability under § 1983 occurs either when the supervisor

personally participates in the alleged unconstitutional conduct or when there is a causal

connection between the actions of a supervising official and the alleged constitutional

deprivation."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

24. "The necessary causal connection can be established 'when a history of

widespread abuse puts the responsible supervisor on notice of the need to correct the

---

[2] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority."  Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

alleged deprivation, and he fails to do so.'" Id. (citations omitted).

25. "Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" Id. (citations and internal quotation marks omitted).

26. In such instances, Plaintiff must show that the policy or custom was "the 'moving force [behind] the constitutional violation.'" Pinkney v. Davis, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted).

27. "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." Id. (citations omitted).

28. Assuming, *arguendo*, that the jail staff at the Clarke County Jail failed to provide Plaintiff timely, adequate medical care after he was injured on December 18, 2007, Plaintiff has failed to establish, or even allege, any personal participation by Sheriff Moore in the alleged unconstitutional conduct.

29. Likewise, Plaintiff has failed to establish, or even allege, a custom or policy of Sheriff Moore which caused the alleged constitutional violation or a history of widespread abuse that put Sheriff Moore on notice of the need to correct the alleged

deprivation.  Cottone, 326 F.3d at 1360.

30. Given the absence of evidence of a causal connection between Defendant Moore and the alleged constitutional deprivation by the jail staff, Plaintiff's claim against this Defendant fails as a matter of law as well.

      B.      No Deliberate Indifference.

31. Turning now to Plaintiff's allegations related to Defendants Chapman and Pugh, Plaintiff claims that Defendant Chapman, the Jail Administrator, unconstitutionally delayed taking him to the doctor for nineteen hours after he was injured (Doc. 1 at 8; Doc. 17 at 10), and Defendant Pugh, a jail officer, unconstitutionally delayed giving him pain medication on December 21, 2007.[3]  (Doc. 1 at 8-9, 12-13).

32. In order to survive Defendants' Motion for Summary Judgment, Plaintiff must establish both the objective and subjective elements of his Eighth Amendment claim.

33. For purposes of this motion, the Court assumes that Plaintiff's head injury, which required nine staples, constitutes an objectively serious medical injury.

34. Therefore, the Court turns to the second, subjective element of Plaintiff's claim, that is, whether Defendant Chapman or Defendant Pugh was deliberately

---

[3] Although Plaintiff complains in his Complaint that he received no pain medication on the day of his injury or the day following his injury and that he received pain medication only in the evenings on December 20-22, 2007, he only alleges that Defendant Pugh delayed giving him pain medication on one day, December 21, 2007. (Doc. 1 at 8-9, 12-13; Doc. 17 at 11-12).  Plaintiff makes no allegations against Defendant Chapman related to delay in receiving his pain medication.

indifferent to Plaintiff's serious medical need.

35. In order to prove his claim of "deliberate indifference," Plaintiff must show that Defendants knew of and disregarded an excessive risk to his health by conduct that was more than mere negligence.  Farrow, 320 F.3d at 1245.  This he has failed to do.

36. The evidence with respect to Defendant Chapman establishes that, once she was notified on the evening of December 18, 2007, that Plaintiff had been injured, she established a direct line of communication with Officer Pritchett and set about to determine the nature and extent of Plaintiff's injuries and his medical needs.

37. Chapman's decision not to send Plaintiff to the hospital that night came only after consideration of detailed information from Officer Pritchett that Plaintiff's wound had been attended to,[4] that he was being observed,[5] that a nurse had been called, and that his injury did not require emergency medical treatment.[6]

---

[4] The evidence shows that Officer Pritchett cleaned Plaintiff's wound with peroxide, applied bandages, and gave Plaintiff Tylenol.  (Doc. 11, att. 3 at 1; Doc. 11, att. 5 at 1).  Plaintiff acknowledges the medical treatment described by Officer Pritchett, with the exception of receiving pain medication.  (Doc. 17 at 9).  For purposes of these motions for summary judgment, the Court will assume that Plaintiff did not receive pain medication on the night that he was injured.

[5] The evidence shows that Plaintiff's wound stopped bleeding around 8:30 p.m., and he went to sleep.  (Doc. 11, att. 5 at 1; Doc. 17 at 9).  Officer Pritchett checked on Plaintiff periodically throughout the night, and each time he reassured her that he was "alright."  (Doc. 11, att. 3 at 1).

[6] There is no evidence that Plaintiff's wound was life threatening.  To the contrary, Dr. Kidd testified that a wound of this type "would not have been a very serious injury." (Doc. 24, att. 1 at 13).

38. When Chapman learned the next morning upon returning to work that the nurse had not arrived, she promptly checked Plaintiff's wound and secured a doctor's appointment for 12:45 p.m. that day, at which time Plaintiff received nine staples and a prescription for an antibiotic.[7]  (Doc. 17 at 9-10).

39. A claim of unconstitutional delay "must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay."  Martin v. Barnes, 2008 WL 250603, *5 (S.D. Ala. 2008) (citing Hill, 40 F.3d at 1189).

40. There is absolutely no evidence in this case to support Plaintiff's claim that the delay between the time of his injury and his appointment with Dr. Kidd was the result of deliberate indifference on the part of Defendant Chapman or that it had any detrimental effect on his medical condition.  Hill, 40 F.3d at 1188.

41. Indeed, the delay in securing immediate medical attention by a physician or nurse appears to have been a consequence of Plaintiff suffering a non-life threatening injury at night, and the on-call nurse failing to come to the jail as promised.

42. Further, as noted above, Dr. Kidd testified that a wound of this type "would not have been a very serious injury" (Doc. 24, att. 1 at 13), and, in his opinion, the delay had no

---

[7] Although Plaintiff states that he was treated by Dr. Kidd personally, his medical records indicate that he was actually treated by a nurse practitioner in Dr. Kidd's office. (Doc. 1 at 8; Doc. 24, att. 1 at 24, att. 1 at 13-14).  In any event, it is undisputed that Plaintiff received nine staples and a prescription for an antibiotic.  (Doc. 24, att. 1 at 13-15, 24).

effect. (Doc. 24, att. 1 at 16-17).

43. While the Court agrees with Plaintiff that it would have been preferable for him to have been seen by a doctor or nurse sooner than nineteen hours after his injury, those facts alone, under the circumstances of this case, do not establish a constitutional violation.

> It is a reality of prison life that appointments with physicians or for diagnostic testing for treatment of non-life-threatening medical conditions must be scheduled.  It is particularly complicated when an inmate is to be seen by an offsite physician.  In such instances, appointments must be made; transportation must be arranged; security must be provided to escort the inmate to the appointment and back; and priority must be given to inmates according to the nature of their medical problems.  (Doc. 17, art. 11 at 4).  It is reasonable to expect some delay while arrangements are being made. Patients in the free world often experience similar delays when seeking treatment of non-life-threatening injuries or ailments.

Martin, 2008 WL 250603 at *8.

44. Because Plaintiff has failed to establish deliberate indifference on the part of Defendant Chapman with respect to the treatment that he received following his injury on December 18, 2007, Plaintiff's claim against Defendant Chapman fails as a matter of law.

45. Similarly, with respect to Plaintiff's claim against Officer Pugh, there is no evidence that Officer Pugh's delay in giving Plaintiff pain medication on December 21, 2007, was the result of deliberate indifference.

18

46. Plaintiff claims that, on December 21, 2007, he asked Defendant Pugh for Tylenol or Advil, and she told him that only the nurse was authorized to dispense pain medication.[8]  (Doc. 17 at 11-12; Doc. 1 at 8-9, 12-13).

47. At approximately 4:30 p.m., Plaintiff again asked Defendant Pugh for pain medication, and she told him that she would "ask Ms. Karen and see what [she] says."  (Doc. 17 at 12).

48. Within the hour, by 5:30 p.m., Plaintiff had received Advil, which he again received at 9:30 p.m.[9]  (Id.).

49. Having considered the evidence related to Defendant Pugh's alleged delay in dispensing pain medication to Plaintiff on December 21, 2007, the Court is satisfied that the evidence does not suggest an "unnecessary and *wanton* infliction of pain," Hill, 40 F.3d at 1187 (emphasis added), nor does it suggest that the delay detrimentally exacerbated his medical condition.  Id.

50. "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."  Martin, 2008 WL 250603 at *8 (citing Waldrop v. Evans,

---

[8] Although Plaintiff claims that Dr. Kidd's nurse practitioner gave him a prescription for pain medication (Doc. 17 at 10), his medical records show that the only prescription that he received from Dr. Kidd's office was for Bactrim, an antibiotic.  (Doc. 24, att. 1 at 13, 24).  In any event, Plaintiff admits that the only pain medicine that he requested from Defendant Pugh was Tylenol and Advil.  (Doc. 1 at 13).

[9] As noted above, according to Plaintiff, he did not receive pain medication during the day from December 20, 2007, through December 22, 2007; however, he received two doses of pain medication each evening on those dates.  (Doc. 1 at 12-13; Doc. 17 at 11-12).  On December 23, 2007, and December 24, 2007, he received pain medication whenever he needed it.  (Doc. 17 at 12).

19

871 F.2d 1030, 1035 (11th Cir. 1989)).

51. Because Plaintiff has failed to establish the subjective requirements of his Fourteenth Amendment medical care claims against Defendants Chapman and Pugh, they are entitled to summary judgment as a matter of law.

## V.  CONCLUSION

52. Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendants, Sheriff Bobby Moore, Clarke County Commissioner Joe Hunt, Jail Administrator Renetta Chapman, and Jail Officer Zanetta Pugh (Docs. 10, 11) be granted; that Plaintiff's Motion for Summary Judgment be denied (Doc. 17); that Plaintiff's action be dismissed with prejudice; and that judgment be entered in favor of Defendants on all claims.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate

Judge.

DONE this 7th day of August, 2009.

   s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.     Objection.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.